**Georgette Henriod MITCHELL,**
**Appellant,**

v.

**MACHINERY CENTER, INC., a corporation, Appellee.**

**No. 6695.**

United States Court of Appeals
Tenth Circuit.

Dec. 12, 1961.

Rehearing Denied Jan. 10, 1962.

Santiago E. Campos of Bigbee & Stephenson, Santa Fe, N. Mex., for appellant.

James T. Paulantis, Albuquerque, N. M. (Iden and Johnson, Bryan G. Johnson and Robert W. McCoy, Albuquerque, N. M., were on the brief), for appellee.

Before MURRAH, Chief Judge, and LEWIS and BREITENSTEIN, Circuit Judges.

LEWIS, Circuit Judge.

This is an action for damages resulting from wrongful death brought by appellant as administratrix of the decedent's estate and against the manufacturer of a piece of mining machinery known as a safety sinking skip. Claim is made that the skip was negligently designed, assembled or tested; and that the manufacturer negligently failed to warn of the machine's potential danger and also breached the warranty of fitness for the intended purpose of the machine. The record is clear that these multiple claims were essentially a single claim— that the skip was negligently designed. The case was tried to a jury in the District of New Mexico and resulted in a verdict for the defendant company.

In its broadest sense the skip is a container hoist used to raise muck from a vertical shaft and dump it at ground level. The equipment is also used, and intended to be used, as an elevator for men and tools. Decedent was killed while riding the skip up when the container dumped and threw decedent out and against the side wall of the mine shaft. The accident occurred below the point in the shaft where decedent's employer had provided guides to stabilize the skip but well within the timbered section of the shaft. The skip at such point was free swinging.

Appellant seeks reversal upon a claim of error in the court's instructions which were the basis of timely and careful objection. The trial court read to the jury Sec. 63–22–5(b), N.M.S.A.1953, and Sec. 63–28–18, N.M.S.A.1953, providing as follows:

"63–22–5(b) When shafts dipping more than thirty-five (35) degrees from the horizontal are being sunk they shall be provided with ladders to within such distance from the bottom as will secure them from blasting. From the lower end of each such ladderway a chain, wire rope or extension ladder shall be provided to reach to the bottom of the shaft."

"63–28–18. Inexperienced workmen.—

"Inexperienced men in underground mines shall at all times be under the supervision of an experienced miner or mine official."

The court then instructed the jury if the decedent violated these sections he was negligent and judgment must be for the defendant. The uncontradicted evidence indicated that decedent was inexperienced, was alone at the bottom of the shaft and that there was no method provided in the shaft to get from the bottom to the timbered section except by means of the skip.

■ Although appellee seeks to justify the court's instructions we are in complete accord with appellant's contention that a false issue was submitted to the jury of sufficient magnitude to nullify a proper consideration of the issues. The cited statutes are safety measures required for the safety of the employee, not requirements for the conduct of the employee. And certain it is that an inexperienced employee is not required to know and insist upon his employer employing required safety standards in a case involving a claim of negligence against a third party manufacturer of defective equipment. The case must be reversed if the plaintiff made a prima facie case of negligence in the design of the skip. If a prima facie case was not made it follows that no prejudice could result from any instruction no matter how faulty.

■ Appellant's claim of negligent design rests on the contention that the skip was hung slightly off center giving it a tendency to lean to the dumping side and to dump more quickly than if it were hung evenly or counterbalanced; also that no safety catch was provided to prevent dumping when locked. It follows, of course, that if the design were such as to allow premature dumping when used for its intended purpose that a finding of negligent design would be warranted. We can find no evidence in the instant case to support this view or

to the effect that this accident was caused by anything attributable to the design of the skip.

At the time this accident occurred the upward journey of the skip passed through three different sections of the shaft. The rise began on the raw floor of the shaft, proceeded through an untimbered section, then through two sections of timber to a point at which guides had been extended, and then, after becoming engaged in the guides, proceeded to the surface through the remaining timbered sections. The skip as operated was thus free swinging as it rose from the floor and passed through two timbered sections. The accident happened in the second area, that is in the timber but before reaching the guides.

A large number of expert witnesses were called by each side who testified at length regarding safe practice in vertical shaft drilling. All seem to agree that the hoisting of a free-swinging skip is very dangerous work and is to be approached with great caution. And all seem to agree that to lift the skip through two sections of timber before engaging it upon guides is a very dangerous and careless procedure. This is so because of the likelihood of the skip bumping and becoming lodged in the timber and either dumping or ripping out the structure. Although the suspect skip was designed to minimize sway when outside the guides and to facilitate the placing of the skip in the guides it was not intended for use with complete stability until that occurred. This skip, or any skip, when contained by becoming lodged in timber before reaching guides, will dump or break if the hoisting pressure is continued. Something has to give.

After the accident, the decedent's employer, Lance Corporation, attached a hook and eye lock between the skip and skip frame. There is evidence that the installation of such a device would delay the unintended dumping of the skip for a period of one second. There is no evidence that such delay would have affected the outcome of decedent's predicament.

Several experts testified that a safety catch would tend to increase the over-all danger of the machinery's use because of the necessity of unhooking the catch by hand.

There is evidence that other companies counterbalanced the skip after using the equipment so as to increase its utility and as a general safety factor. But there is no evidence that this functional change was made because of an inherent danger in the skip when used under the circumstances giving rise to this accident. The evidence shows the counterbalance was added to make the skip lie more level upon the shaft floor while being loaded or to make the skip meet the guides more easily when being lifted with maximum loads. There is no evidence that the suspect skip would dump of its own initiative when carrying only the weight of a man if counterbalanced or not.

Appellant cites the language of the patent claims for this device assuring automatic re-engagement of the skip guide shoes and contrasts it with the testimony of appellee's expert that nothing could be designed which would positively eliminate the hazardous task of returning the skip to the skip guides. But the accident occurred considerably below the guides, so that even assuming that there was some reliance upon the patent statement, it could not be found to be the proximate cause of the accident.

■ The record is barren of evidence to demonstrate that a defect in the skip caused the accident. Contrasted with the speculation that the skip dumped of its own accord is the theory that some peculiarity of the particular moment occasioned the tragedy—some negligence in hoisting the machine at that time or carelessness on the part of the decedent. The facts necessary to sustain any inference as to the cause of the tipping are absent. An inference is not a supposition or a conjecture, but is a logical deduction from facts proved and guesswork is not a substitute therefor, Stambaugh v. Hayes, 44 N.M. 443, 103 P.2d 640; Franklin v. Skelly Oil Co., 10 Cir., 141

F.2d 568, 153 A.L.R. 156; McCready v. United Iron and Steel Co., 10 Cir., 272 F.2d 700; Commercial Standard Insurance Co. v. Feaster, 10 Cir., 259 F.2d 210.

Although hindsight might persuade that this accident could possibly have been prevented by some addition to the invention, the action taken by other companies in forbidding men to ride through the timbers without stabilizing guides or maintaining the guides to the last set of timber indicates the improbability of adapting the operation to total safety regardless of human factors.

The designer does not have a duty to produce machinery incorporating only the ultimate in design. See Marker v. Universal Oil Products, 10 Cir., 250 F.2d 603.

Viewing the evidence in the light most favorable to the plaintiff, no cause of action against the defendant was established and defendant's motion to dismiss should have been sustained. On this basis, the judgment of the lower court is affirmed.