Angela Marie **PARTON**

v.

**CITY OF BENTONVILLE; James David Dray, Individually and as an employee of the City of Bentonville; Larry Horton, Individually and as an employee of the City of Bentonville; Leon Reece, Individually, as an employee of the City of Bentonville, and as Chief of the Bentonville Fire Department.**

No. 94–5159.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

June 2, 1995.

V. John Lisle, Jr., Donnie W. Rutledge, II, Lisle Law Firm, Springdale, AR, for Plaintiff.

Kevin J. Pawlik, Bentonville, AR, Mark Robert Hayes, No. Little Rock, AR, for Defendants.

*AMENDED MEMORANDUM OPINION*

H. FRANKLIN WATERS, Chief Judge.

The complaint alleges that James Dray, a licensed EMT and ambulance driver for the City of Bentonville Fire Department, engaged in reckless and deliberately indifferent operation of an ambulance, resulting in accident and injury to plaintiff. The same allegation is made against Larry Horton, also an employee of the City of Bentonville Fire Department, who was "riding shotgun" in the ambulance at the time of the accident. The complaint also seeks damages against the City of Bentonville and Leon Reece, Chief of the Bentonville Fire Department, for failing to adequately train, supervise, and discipline the emergency personnel of the Bentonville Fire Department.

Plaintiff seeks relief under 42 U.S.C. § 1983 for deprivations of her constitutional rights under the Due Process Clause and the Search and Seizure Clause of the Fourth and Fourteenth Amendments. Further, plaintiff filed state law claims of outrage and negligence.

Defendants have filed a motion for partial summary judgment arguing that all the defendants are entitled to judgment as a matter of law on the due process, unreasonable seizure and outrage claims. Defendants do not seek a ruling on plaintiff's negligence claim, but they do request that the court not exercise discretionary jurisdiction over the remaining state law claim.

The court will grant the motion for partial summary judgment as to all the defendants on all federal claims. As to the remaining state law claims of outrage and negligence, the court will dismiss those without prejudice.

## I. SUMMARY JUDGMENT STANDARD

Rule 56(c) provides that summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there exists no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56, Fed.R.Civ.Proced.

In determining whether there are any genuine issues of material fact, the court must first give the nonmoving party "the benefit of the reasonable inferences that can be drawn from the underlying facts." *Fischer v. NWA, Inc.,* 883 F.2d 594, 598 (8th Cir.1989), *citing, Trnka v. Elanco Prod. Co.,* 709 F.2d 1223 (8th Cir.1983), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990). The court may then grant the motion for summary judgment only "if the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## II. BACKGROUND

The facts of the case on summary judgment are as follows. Plaintiff and defendants, James Dray and Larry Horton, were involved in an automobile collision in the early evening on February 26, 1993. At the time, Dray and Horton, members of the Bentonville Fire Department Ambulance Squad, were responding to an emergency cardiac call in a Bentonville Fire Department ambulance. According to Dray's testimony, he was driving westbound on State Highway 102. Dray recalls looking at the speedometer and says that he was driving at approximately 65 m.p.h. He began decelerating 200 to 300 yards away from the intersection of "J" Street and Highway 102 where the accident occurred. He estimates his speed at 40 m.p.h. at the time of impact, although he did not look at the speedometer.

According to both Dray and Horton, they observed traffic as they approached the intersection to determine if it was safe to cross, and they sounded the ambulance's siren, using its four different sound frequencies. When Dray and Horton were both satisfied that all cars in the north, south and east bound lanes of the intersection had stopped, Dray drove through the intersection against the red light. Plaintiff, driving south on "J", apparently drove by all the stopped cars and collided with the ambulance.

In an attempt to show that this scenario creates a genuine issue as to the recklessness

and deliberate indifference of the driver, plaintiff relies on the following.

First, plaintiff notes that a "giant Wal–Mart distribution center is adjacent to the accident site, and has a row of trees or shrubs that run for a substantial distance near the Highway 102 right of way." Presumably, plaintiff means to indicate that defendants could not have had a decent view of oncoming traffic due to the shrubs, but there is no evidence to that effect. The only pertinent evidence is Dray's own testimony that the trees were "tiny" so that he "could see over them easily" and that they had no "visual effect" on him whatsoever.

Second, plaintiff claims that there were a number of cars "in or near" the intersection at the time of the accident. Defendants own testimony is that there were a number of stopped cars at the intersection and that plaintiff apparently drove right by these parked cars and into the intersection. The court cannot understand how that fact goes to show any egregious conduct by the defendants. If anything, the fact that there were already stopped cars in the intersection would appear to indicate that plaintiff's conduct was not entirely proper.

Third, the ambulance was going at least 40 m.p.h. when it ran the red light. According to the affidavit of plaintiff's expert:

the speed of an ambulance may properly be as little as 5–10 miles per hour when going through a red light. Factors that influence what the speed should be include: congestion of the intersection, visibility, time of day, and other factors.

Of course, the fact that speeds over 10 m.p.h. may be too great in some circumstances says nothing about what occurred in this case, but plaintiff's expert goes on to testify that:

I have never seen or heard of a supervisor at a fire department that would allow a driver to proceed through a red light at an intersection in a heavily traveled, urban intersection at forty (40) miles per hour, or any speed that is even close to that speed. I would never teach my students to drive in that manner, as in my opinion it would probably violate Illinois law and probably Arkansas law. It is not safe to drive at

that speed through that type of intersection.

The relevant statute, Ark.Code Ann. § 27–49–109(a) (Michie Repl.1994) provides in pertinent part that:

The driver of any authorized vehicle when responding to an emergency call upon approaching a red or stop signal or any stop sign shall slow down as necessary for safety but may proceed cautiously past the red or stop sign or signal.

At the time of the accident, Dray, a licensed EMT and experienced ambulance driver, was responding to an emergency cardiac call with his partner Horton, also a licensed EMT and certified paramedic.

### III. DUE PROCESS

■ The Due Process Clause provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Eighth Circuit has held that the Due Process Clause is violated when the state fails to protect the life, liberty or security of individual citizens in only two situations: "first, in custodial and other settings in which the state has limited the individuals' ability to care for themselves; and second, when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." *Gregory v. City of Rogers,* 974 F.2d 1006, 1010 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1265, 122 L.Ed.2d 661 (1993). The first class of cases can be referred to as custodial cases, and the second class of cases can be referred to as state-created danger cases. The two classes of cases together will be referred to as due process cases or substantive due process cases.

This case is a state-created danger case. However, even in a state-created danger case, the state actor is not liable every time he affirmatively places a particular individual in a position of danger the individual would not otherwise have faced. Rather, the state actor must place the individual in danger with conduct that is culpable to some degree. As to the required showing of culpability, it is clear that more than mere negligence is required to prevail on a due process claim.

Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). It is also clear that more than "gross negligence" is required. Myers v. Morris, 810 F.2d 1437, 1468 (8th Cir.1987), cert. denied, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987).[1] However, the exact level of culpability that is required to prevail on a due process claim has not been settled in this circuit. In fact, the Eighth Circuit expressly refused to decide that question in Gregory, 974 F.2d at 1012 ("we need not consider ... what greater standard of care is necessary to state a substantive due process claim under section 1983").[2]

This court is thus faced with a question of first impression in this circuit. In the circuit courts as a whole, there is no clear agreement setting forth the level of culpability that offends due process under 42 U.S.C. § 1983.

The Supreme Court has not definitively established the level of culpability that is required to make out a substantive due process claim based on a failure to protect [or enhancement of danger], but has held that something more than "mere negligence" must be shown. [Davidson v. Cannon, 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986) ] Indeed in Collins v. City of Harker Heights, [503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) ],

the Court implied that allegations of deliberate conduct that "shocks the conscience" might be required to state a substantive due process claim. [Id., at 129–30, 112 S.Ct. at 1071]. Multiple standards including gross negligence, recklessness, deliberate indifference, and conscience-shocking conduct, have been articulated by the lower federal courts. [citations omitted].

Karen M. Blum, DeShaney: Custody, Creation of Danger, and Culpability, 27 Loy. L.A.L.Rev. 435, 471–478 (1994) (emphasis added). For more citations to the varying standards utilized by various courts in due process cases, see Fagan v. City of Vineland, 22 F.3d 1296, 1305–06 (3rd Cir.1994); Temkin v. Frederick County Commissioners, 945 F.2d 716, 722–23 (4th Cir.1991), cert. denied, 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992).

■ As the Eighth Circuit has not determined the precise level of culpability that must be shown to prevail on a substantive due process claim, this court now holds that, where innocent civilians are injured in a car accident caused by a high speed police chase, or by any other state actor who is acting in the line of duty and in contravention of the rules of the road, the injured civilian states a due process claim only if the alleged misconduct "shocks the conscience."[3]

1. As authority for its holding in Myers, the Eighth Circuit relied entirely on the Supreme Court's decision in Daniels, supra. However, that case only held that merely negligent conduct by state actors does not offend the due process clause. Daniels specifically reserved the question of "whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause." Id., 474 U.S. at 334 n. 3, 106 S.Ct. at 667 n. 3. As such, Myers was in error when it treated Daniels as controlling, a fact which has been noted by more than one court. See Fargo v. City of San Juan Bautista, 857 F.2d 638, 641 n. 3 (9th Cir.1988); Roach v. City of Fredericktown, 693 F.Supp. 795, 798 (E.D.Mo. 1988), aff'd, 882 F.2d 294 (8th Cir.1989). Nevertheless, the Eighth Circuit has followed Myers or cited it without criticism in a string of cases. See e.g. Sellers v. Baer, 28 F.3d 895, 902–903 (8th Cir.1994), cert. denied, — U.S. —, 115 S.Ct. 739, 130 L.Ed.2d 641 (1995); Gregory, 974 F.2d at 1012; Roach v. City of Fredericktown, 882 F.2d 294, 297 (8th Cir.1989).

2. In at least two post-Gregory cases, the Eighth Circuit has not taken the opportunity to clarify the proper standard. In Sellers v. Baer, 28 F.3d 895 (8th Cir.1994), the court assumed that a state-created danger resulting from "recklessness" would state a due process claim, but held that no reasonable fact-finder could find reckless conduct. In Roach v. City of Fredericktown, 882 F.2d 294 (8th Cir.1989), the court assumed that a state-created danger that "shocks the conscience" states a due process claim, but held that the allegations in the complaint did not rise to that level.

3. The court specifically reserves the question of whether this standard applies to all due process cases. The court in Fagan, supra, limited the "shocks the conscience" standard to state-created danger cases, but did not apply the same standard to custodial due process cases. The court in Temkin, supra, limited the "shocks the conscience" standard to state-created danger cases involving police chases, and did not decide whether the same standard would be extended to reach other due process cases. See DeShaney:

There are numerous reasons for adopting the "shocks the conscience" standard as the appropriate one. First of all, the lesser concepts of culpability (recklessness, gross negligence, and deliberate indifference) have little meaning in those situations when a police officer or ambulance driver is acting in deliberate contravention of the rules of the road. If one were looking for conduct that would normally be considered reckless *per se*, it would be hard to find better examples than a driver who intentionally ran stop signs, ran red lights, and doubled the speed limit while trying to chase another vehicle or just get somewhere. Still, we allow certain state actors to engage in such conduct in certain situations because it serves the public good. Given the known risks we are assuming as a community, this court must adopt the "shocks the conscience" standard as the appropriate one.

Second, any lesser standard would lead to federal litigation almost every time there is an accident with a state vehicle driving in an emergency situation, and the due process clause would become a "font of tort law to be superimposed upon whatever systems may already be administered by the States" which is clearly something the Supreme Court wants to avoid. *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). For instance, in *Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729, 734 (8th Cir. 1993), the Eighth Circuit refused to apply the state-created danger theory in such a way as to "make § 1983 virtually coterminous with traditional tort law, the very expansion of constitutional tort liability that the Supreme Court has rejected...." Other courts have addressed similar concerns in the context of what might be called condoned reckless driving cases. According to *Apodaca v. Rio Arriba County Sheriff's Dep't*, 905 F.2d 1445, 1446–47, n. 3 (10th Cir.1990), "[c]ollisions between police vehicles and others caused by police negligence clearly fall on the 'tort' side of the line" even when plaintiffs attempt to "dress up" their claims by labelling the conduct as "reckless and wanton." Also, in *Fagan*, 22 F.3d at 1306–07, the court stated its opinion, with lengthy explanation, that in po-

lice pursuit cases, the reckless indifference standard "is grounded in tort law, not in constitutional principles."

Third, we know that the Eighth Circuit has already rejected gross negligence as the proper standard, and it is difficult to make any meaningful distinctions between recklessness and gross negligence. Depending on how gross negligence is defined, there may not be any difference. In *Britt v. Little Rock Police Dept.*, 721 F.Supp. 189, 192 (E.D.Ark.1989), Judge Eisle defined recklessness as:

> intentionally doing an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, Prosser & Keeton, *Torts*, at 212....

In contrast, the Sixth Circuit in *Simescu v. Emmet County Dep't of Social Serv.*, 942 F.2d 372, 375 (6th Cir.1991) (internal quotation omitted), defined gross negligence as:

> intentionally [doing] something unreasonable with disregard to a known risk or a risk so obvious that he must be assumed to have been aware of it, and of a magnitude such that it is highly probable that harm will follow.

As pointed out by the Third Circuit, this concept of gross negligence "closely resembles reckless indifference." *Fagan v. City of Vineland*, 1993 WL 290386, at *12 (3d Cir. Aug. 5, 1993), *vacated*, 5 F.3d 647 (3d Cir. 1993) (en banc), *cited by DeShaney: Custody, Creation of Danger, and Culpability*, 27 Loy.L.A.L.Rev. at 472. Moreover, this concept of gross negligence has been adopted by many courts in the due process cases. Thus, only a "shocks the conscience" standard provides a truly meaningful alternative to the gross negligence standard rejected by the Eighth Circuit.

Fourth, at least two circuits have expressly held that the appropriate standard of culpability in police chase cases is a "shocks the conscience" standard. *Fagan, supra* (adopting "shocks the conscience" test for all state-created danger cases); *Temkin, supra* (adopting "shocks the conscience" standard

*Custody, Control & Creation of Danger,* 27 Loy. L.A.L.Rev. at 476 ("There is certainly precedent

for applying different standards of culpability to the same constitutional provision.").

for all "police driving misconduct" cases). Moreover, both cases convincingly argue that at least one other case adopts a nominal gross negligence standard but qualifies that standard in such a way as to make it the functional equivalent of a "shocks the conscience" standard. In *Jones v. Sherrill*, 827 F.2d 1102, 1106–07 (6th Cir.1987), the court, applying what it called a "gross negligence and outrageous conduct" standard, found that the facts "were not sufficient to charge the government officials with outrageous conduct or arbitrary use of government power" necessary to state a claim because the officer's intent in initiating the chase was "to protect public safety."

■ Applying the "shocks the conscience" standard to the facts of this case, it is clear that there is nothing shocking about what transpired. To illustrate, in *Temkin, supra,* the Fourth Circuit affirmed the granting of summary judgment for defendants in a police chase case. In so doing, the court examined the most egregious allegations against the defendants and found them to be inadequate.

> the Temkins have called our attention to five specific facts which they have contended would demonstrate that [defendant's] conduct was violative of the applicable standard of care: 1) the chase continued for a significant period of time over a ten mile area; 2) the chase continued at a very high rate of speed; 3) the chase was initiated because of a minor violation; 4) the police already had, at a minimum, a partial identification of the license plate of the suspect vehicle; and 5) the chase violated General Order # 204 because [defendant] failed to maintain radio contact with his supervisor throughout. To those five facts, we would add the expert deposition testimony of Dr. Geoffrey Alpert that [defendant's] conduct was "reckless," "totally irresponsible," and "wanton."

*Temkin,* 945 F.2d at 723.

There is nothing about the facts of these cases that strikes the court as any more

egregious than the facts in *Temkin* or many other police chase cases where the claim or the evidence has been found to be inadequate under gross negligence, reckless disregard and shocks the conscience standards. Rather than discuss the details of these cases at length, the court simply cites to a lengthy discussion of such cases in *Temkin,* 945 F.2d at 721–723. This discussion concludes that the facts of *Temkin* are "almost indistinguishable from those found in *Roach, Taylor, Sherrill,* and *Walton.* Indeed, some of the facts in those four cases involved conduct more egregious than that present here." To this list, the court would add the case of *Apodaca, supra.*

It is not clear what type of abuse of discretion would be so eye-catching as to shock the conscience. What is clear is that the conduct at issue in this case does not rise to that level. *Apodaca,* 905 F.2d at 1446–47 n. 3 (plaintiffs claim dismissed because "their cases come down to allegations that [defendant] was driving too fast for the road and visibility conditions").

Even if the court has chosen the wrong appellation for the standard to be applied in these cases, it is still clear that the motion should be granted because plaintiff's lawyers are attempting to turn an ordinary negligence case which should have been filed in state court into a federal case. The record before the court supports only a garden variety vehicular accident negligence case, if that, and one cannot make a federal case out of that irrespective of how imaginatively it is pled or how many "experts" are retained.[4]

## IV. CONCLUSION

The court has found that there was no due process violation committed by the ambulance driver, James Dray. As to the claim for unreasonable seizure, the facts of this case clearly do not even state a claim, since

---

4. In this respect, the affidavit of plaintiff's expert which was submitted adds little if anything to this case, and it is doubtful that he would be allowed to testify to his conclusions in this court because such conclusions would not "assist the trier of fact to understand the evidence or to determine a fact in issue." Federal Rule of Evidence 702. That is true because the jury would, when given the facts relevant to the occurrence, be in as good a position to reach its conclusions and the "expert's" conclusions would not aid the individual jury members in reaching a determination that, in our system, is properly within the province of the jury.

the accident was unintentional. *Roach,* 882 F.2d at 296–97. The court does not understand why this "theory" was pled since it was clearly meritless (nothing was searched and nothing was seized).

Since there was no underlying constitutional violation by the driver, James Dray, there can be no liability on the part of Larry Horton, who was simply "riding shotgun." Also in the absence of an underlying constitutional violation, there can be no liability on the part of the City of Bentonville or Leon Reece, the Chief of the Bentonville Fire Department, for failure to train. *Id.,* 882 F.2d at 297–98.

As to the remaining state law claims, the court will dismiss those without prejudice. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).