

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-23-1997

# Morse v. Lower Merion Sch

Precedential or Non-Precedential:

Docket 96-2134

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Morse v. Lower Merion Sch" (1997). *1997 Decisions*. Paper 281.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/281

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 23, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-2134

JEROME P. MORSE, Individually and as Executor of the
Estate of Diane M. Morse, Deceased, and as Parent and
Natural Guardian of JUREE N. MORSE, a Minor,
        Appellant

v.

LOWER MERION SCHOOL DISTRICT; DAYCARE
ASSOCIATION OF MONTGOMERY COUNTY, INC., d/b/a
ARDMORE CHILD CARE CENTER; JAMISON
CONTRACTORS, INC.; BUTTONWOOD COMPANY, INC.;
UNITED STATES ROOFING CORPORATION

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 96-cv-04576)

Argued July 24, 1997

Before: SCIRICA and NYGAARD, Circuit Judges
and DEBEVOISE, District Judge*

(Filed December 23, 1997)


_____


*The Honorable Dickinson R. Debevoise, United States District Judge for
the District of New Jersey, sitting by designation.

PAUL J. DRUCKER, ESQUIRE
 (ARGUED)
Jablon, Epstein, Wolf & Drucker
The Bellevue, Ninth Floor
Broad Street at Walnut
Philadelphia, Pennsylvania 19102

WILLIAM F. JOSEPH, ESQUIRE
1831 Chestnut Street, Suite 1001
Philadelphia, Pennsylvania 19103

 Attorneys for Appellant

DIANE C. BERNOFF, ESQUIRE
 (ARGUED)
JAY B. HARRIS, ESQUIRE
Fineman & Bach
1608 Walnut Street, 19th Floor
Philadelphia, Pennsylvania 19103

 Attorneys for Appellees,
 Lower Merion School District;
 Daycare Association of
 Montgomery County, Inc., d/b/a
 Ardmore Child Care Center

JAMES J. GILLESPIE, JR.,
 ESQUIRE
Stolarski, Gillespie & Hendrzak
2005 Market Street, Suite 2030
Philadelphia, Pennsylvania 19103

 Attorney for Appellee,
 Jamison Contractors, Inc.

OPINION OF THE COURT

SCIRICA, Circuit Judge.

This civil rights action raises the question of what a plaintiff must plead in order to state a viable claim under the state-created danger theory of 42 U.S.C.A. S 1983 (West 1994 & Supp. 1997). The district court granted defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6), finding

2

plaintiff failed to plead one of the elements of the test set forth by this court in Kneipp v. Tedder, 95 F.3d 1199 (3d Cir. 1996) and thereby failed to state a claim upon which relief could be granted. Although we analyze the applicable law somewhat differently from the district court, we will affirm.[1]

I

Background and Procedural History

On July 28, 1994, Diane Morse, a teacher at the Ardmore Child Care Center, was shot and killed in front of a classroom of children by Arcelia Truman ("Trudy") Stovall, a local resident with a history of mental illness. The Ardmore Child Care Center, which is owned and operated by the Daycare Association of Montgomery County, has operated out of a wing of Lower Merion High School for several years, under a lease between the Daycare Association and the Lower Merion School District. Stovall, who was subsequently convicted of the murder of Diane Morse and incarcerated in a psychiatric hospital, was able to enter the building through an unlocked rear entrance.

In the weeks preceding the shooting, several contractors were working on construction projects at the high school, in the vicinity of the Ardmore Child Care Center location. Jamison Contractors, Inc. was engaged in construction and repair activities in and around the school building. Buttonwood Company, Inc. was painting a swimming pool within the building, and United States Roofing Corporation was repairing the roof in the area adjacent to the swimming pool. To accommodate their construction projects, the contractors made use of the back entrance to the building. Jamison employees would prop open the door to facilitate the movement of materials in and out of the building. As

---

1. We may affirm the lower court's ruling on different grounds, provided the issue which forms the basis of our decision was before the lower court. See Mark v. Borough of Hatboro, 51 F.3d 1137, 1139 n.1 (3d Cir. 1995), cert. denied, 116 S. Ct. 165 (1995); Neely v. Zimmerman, 858 F.2d 144, 149 (3d Cir. 1988).

part of its work on the swimming pool, Buttonwood set up a compressor outside of the building, which was connected to air-driven tools in the pool area by a series of two inch cables. In order to reach the tools in the pool area, Buttonwood ran these cables through the back entrance to the school. For their part, the employees of U.S. Roofing used the open door as a means of access to the restrooms located within the building.

This action was brought under 42 U.S.C. S 1983 by Diane Morse's husband on his own behalf, as executor of her estate, and in a representative capacity on behalf of their daughter. The complaint alleges, inter alia, that the Lower Merion School District and the Daycare Association deprived Diane Morse of her right to be free from physical harm, and deprived plaintiff and his daughter of their fundamental right of association with the decedent. 2 In particular, plaintiff claims the School District had a written policy which provided that all side and back entrances to the school were to be kept locked at all times. The complaint alleges that, although aware of the unsecured back entrance, the School District and the Daycare Association made no effort to correct the condition, and in fact facilitated the workers' access by unlocking the back entrance each day to assist the various contractors. In addition, the complaint alleges the School District and the Daycare Association were aware of other security breaches prior to July 1994 that had allowed unauthorized persons to gain access to the building. These previous incidents had resulted in theft, vandalism, and, in at least one instance, assault. As a result, plaintiff asserts, the "environment created by [defendants] was dangerous, was known by them to be dangerous and created the opportunity for Trudy Stovall's attack on the decedent that would not otherwise have existed."

Defendants filed a motion to dismiss under Rule 12(b)(6)

_____

2. The complaint also raised various state law claims against Jamison, Buttonwood and U.S. Roofing. The district court dismissed the state law claims for lack of supplemental jurisdiction. In order to protect these claims, plaintiff subsequently filed an action in state court against the private defendants.

on two grounds. First, defendants contended that neither the School District nor the Daycare Association was acting under color of state law, as required by Section 1983.3 Second, defendants argued that Mr. Morse's complaint failed to meet the requirements for a state-created danger claim. The district court declined to address defendants' color of state law arguments, ruling only on the sufficiency of the state-created danger claim.4

The district court read plaintiff 's complaint to allege three distinct theories.5 The first theory of liability was that defendants breached their duty to maintain a safe working environment by leaving the back entrance unsecured. The second theory premised liability on defendants' alleged policy of refusing to institute and maintain safety procedures, thus demonstrating a deliberate indifference to Ms. Morse's constitutional rights. The final theory alleged that the School District and the Daycare Association were liable under the state-created danger theory ofS 1983. Although the district court analyzed each theory and found that plaintiff failed to state a claim under any of them, the only theory raised on appeal, and the only one reviewed here, is plaintiff's state-created danger theory.

The district court began its analysis of plaintiff's claim by examining our recent decision in Kneipp v. Tedder, in which we adopted the state-created danger theory of liability under S 1983. 95 F.3d 1199, 1211 (1996). In particular, the district court looked to whether "liability based on the

_____

3. With respect to this ground, defendants submitted the lease agreement between the Daycare Association and the School District, as well as the affidavit of the Daycare Association's Executive Director, in support of their 12(b)(6) motion. The district court noted that it could have, at its discretion, converted the motion into a motion for summary judgment. It declined to do so, however, finding these documents inconclusive on the color of state law issue. Morse v. Lower Merion Sch. Dist., 1996 WL 677514, *2 (E.D. Pa. Nov. 20, 1996).

4. Because we, too, find that plaintiff has failed to state a claim under the state-created danger theory, we need not address the question whether the School District or the Daycare Association were acting under color of state law at the time of Diane Morse's death.

5. In his briefs on appeal, plaintiff denies this, and states that his complaint relied solely on the state-created danger theory of liability.

state-created danger theory must be predicated on affirmative acts by a state actor." Morse v. Lower Merion Sch. Dist., 1996 WL 677514, at *5 (E.D. Pa. Nov. 20, 1996).6 The court noted that, unlike the facts in Kneipp, which involved affirmative acts by the police that created an inherently dangerous situation for the plaintiff, the complaint here attempted to establish liability based primarily on defendants' failure to act. Because such failures to act "have consistently been held non-actionable under Section 1983,"7 the district court concluded that plaintiff could not support his S 1983 claim by relying on allegations that defendants failed to prevent the contractors from propping open the back door (Complaint PP 26, 28, 30), failed to detain Ms. Stovall prior to the day of the murder (Complaint P 31), and refused to institute and maintain security (Complaint P 42). The district court held the only allegation in the complaint which could support plaintiff 's state-created danger theory was that defendants themselves unlocked the back entrance to the school to facilitate the work of the various contractors. But the district court declined to examine whether this constituted an affirmative act, and instead based its decision on a different element of the Kneipp analysis.

The district court premised its decision on Kneipp's holding that a state actor can only be held liable if "a relationship [existed] between the state and the person injured . . . during which the state places the victim in danger of a foreseeable injury." Kneipp, 95 F.3d at 1209 (citations omitted). Because there was no dispute whether this relationship existed between the police and the plaintiff

_____

6. The district court acknowledged that "the line between action and omission is not always clear." The affirmative act requirement is discussed in greater detail, infra.

7. Morse, 1996 WL 677514, at *6 (citing DeShaney v. Winnebago County Dept. of Social Serv., 489 U.S. 189 (1989); D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364 (3d Cir. 1992) (en banc), cert. denied, 506 U.S. 1079 (1993); Searles v. Southeastern Pennsylvania Transp. Auth., 990 F.2d 789 (3d Cir. 1993); Brown v. Grabowski, 922 F.2d 1097 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991); Huston v. Montgomery County, No. Civ. A. 95-4209, 1995 WL 766308 (E.D. Pa. Dec. 28, 1995)).

in Kneipp, the district court looked to pre-Kneipp decisions to analyze the parameters of this requirement. The district court examined Doe v. Methacton Sch. Dist., 880 F. Supp. 380, 386 (E.D. Pa. 1995), aff'd, 124 F.3d 185 (3d Cir. 1997), which held that the state-created danger theory would only affix liability if the victim of the resulting harm is "known and identified," and not "simply a member of the greater public," and Mark v. Borough of Hatboro, 51 F.3d 1137, 1153 (3d Cir. 1995), cert. denied, 116 S. Ct. 165 (1995), where we held that "cases where the state-created danger theory was applied were based on discrete, grossly reckless acts committed by the state or state actors. . . leaving a discrete plaintiff vulnerable to foreseeable injury." Based on its reading of these two cases, as well as Martinez v. California, 444 U.S. 277 (1980) and Commonwealth Bank & Trust Co., N.A. v. Russell, 825 F.2d 12 (3d Cir. 1987), the district court concluded that, "to make out a state-created danger claim, a plaintiff must allege facts indicating that there was a particular danger to the victim of the resulting harm." Morse, 1996 WL 677514, at *8. Because plaintiff failed to allege that "Diane Morse faced a particular danger distinct from that faced by the population of persons inside the school" as a result of the back entrance being left unlocked, the district court granted defendants' motion to dismiss. Id.

II

We have jurisdiction under 28 U.S.C. S 1291, and our review of the grant of a motion to dismiss is plenary. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250 (3d Cir. 1994). When considering a Rule 12(b)(6) motion, we are required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff. Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989); D.P. Enter. Inc. v. Bucks County Community College, 725 F.2d 943, 944 (3d Cir. 1984). A Rule 12(b)(6) motion should be granted "if it appears to a certainty that no relief could be granted under any set of facts which could be proved." D.P. Enter. Inc., 725 F.2d at 944; Richardson v. Pennsylvania Dep't of Health, 561 F.2d 489,

7

492 (3d Cir. 1977). But a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-30 (3d Cir. 1997)(quoting Glassman v. Computervision Corp., 90 F.3d 617, 628(1st Cir. 1996)).8 Mitchell v. Duvall County Sch. Bd., 107 F.3d 837, 839-40 (11th Cir. 1997)(affirming dismissal of state-created danger claim where it was "beyond doubt that appellant cannot prove a set of facts" which support his claim); Johnson v. Dallas Indep. Sch. Dist., 38 F.3d 198 (5th Cir. 1994), cert. denied, 514 U.S. 1017 (1995)(same).

III

Discussion

Plaintiff brought this civil rights action under 42 U.S.C. S 1983.9 By itself, Section 1983 does not create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law. Baker v. McCollan, 443

_____

8. See also Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure S 1357 (2d ed. 1997) (noting that courts, when examining 12(b)(6) motions, have rejected "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations"); Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996)(affirming dismissal of S 1983 action and noting that "[w]hile the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."); Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").

9. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C.A. S 1983.

U.S. 137, 144 n.3 (1979); Kneipp, 95 F.3d at 1204. In order to state a claim, plaintiff must show that defendants, acting under color of state law, deprived him of a right secured by the Constitution or the laws of the United States. See Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986).

As noted, plaintiff alleged defendants subjected Diane Morse to a dangerous and ultimately fatal situation, in violation of her Fourteenth Amendment right to substantive due process, by allowing a mentally deranged and homicidal third party to have access to the day care center where Diane Morse worked. Although the general rule is that the state has no affirmative obligation to protect its citizens from the violent acts of private individuals, courts have recognized two exceptions to this rule. See, e.g., D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1369–73 (3d Cir. 1992) (en banc), cert. denied, 506 U.S. 1079 (1993); Uhlrig v. Harder, 64 F.3d 567, 572 (10th Cir. 1995), cert. denied, ___ U.S. #6D6D 6D#, 116 S. Ct. 924 (1996). The first of these is commonly known as the "special relationship" exception, and allows a plaintiff to recover "when the state enters into a special relationship with a particular citizen . . . [and] fails, under sufficiently culpable circumstances, to protect the health and safety of the citizen to whom it owes an affirmative duty." D.R., 972 F.2d at 1369; see also Black v. Indiana Area Sch. Dist., 985 F.2d 707, 713 (3d Cir. 1993). The second exception is the"state-created danger" theory of liability.

The state-created danger theory had it origins in the Supreme Court's decision in DeShaney v. Winnebago County Dep't of Social Serv., 489 U.S. 189 (1989). The petitioner in that case was a young boy who was chronically abused by his father. The county department of social services, after receiving many complaints about the boy's mistreatment, took several steps to ensure his safety. But despite these efforts, the boy remained in his father's custody, and was eventually beaten so savagely that he suffered severe brain damage. The boy and his mother sued the department of social services under the "special relationship" theory of 42 U.S.C. S 1983 for their failure to protect the boy from his father. Although the Court

9

ultimately rejected plaintiff's claim, 489 U.S. at 195-96, it went on to explain that, "[w]hile the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." 495 U.S. at 201. Based on that language, several courts of appeals have allowed claims under Section 1983 on the "state-created danger" theory. See, e.g., Dwares v. City of New York, 985 F.2d 94, 99 (2d Cir. 1993); Reed v. Gardner, 986 F.2d 1122, 1125 (7th Cir. 1993), cert. denied, 510 U.S. 947 (1993); Freeman v. Ferguson, 911 F.2d 52, 55 (8th Cir. 1990); Cornelius v. Town of Highland Lake, 880 F.2d 348 (11th Cir. 1989), cert. denied, 494 U.S. 1066 (1990); Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989), cert. denied, 498 U.S. 938 (1990).

We adopted the "state-created danger" theory in Kneipp v. Tedder. The plaintiffs there were the parents and legal guardians of Samantha Kneipp. Samantha and her husband, Joseph, were stopped by police while returning home on foot on a cold night in January. The police stopped the Kneipps a short distance from their home for allegedly causing a disturbance. According to the police, Samantha was visibly intoxicated – she had difficulty walking, and smelled of alcohol and urine. During the course of their discussion Joseph Kniepp expressed the need to relieve the Kneipps' babysitter, and asked the police if he could return home. Joseph testified that the police informed him he could leave, and he left assuming that they would either take Samantha to a hospital or the police station. But the police sent Samantha home alone shortly thereafter. Approximately two hours later, Samantha was found lying at the bottom of an embankment across the street from the Kneipps' home. As a result of her exposure to the cold, Samantha suffered permanent brain damage. Plaintiffs brought suit, alleging the police officers' actions deprived Samantha of her right to substantive due process and her liberty interest in personal security. The district court granted summary judgment in favor of the defendants. We reversed, holding that the "state-created danger theory is a viable mechanism for establishing a constitutional claim under 42 U.S.C. S 1983," and that

10

plaintiffs had raised a triable issue of fact under that theory. Kneipp, 95 F.3d at 1211.

In reaching this conclusion, we applied the four-part test articulated in Mark v. Hatboro, which holds a state actor liable if:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.

Kneipp, 95 F.3d at 1208 (quoting Mark, 51 F.3d at 1152). We also noted that "[t]hose courts which have recognized the state-created danger theory have employed a deliberate indifference standard." Id. at 1208 (citations omitted). When this test is applied to the facts of this case, it becomes clear that plaintiff has not set forth a claim under S 1983 upon which relief can be granted.

A. Foreseeable and Fairly Direct Harm

The first element of the Kneipp test requires that the harm ultimately caused was a foreseeable and a fairly direct result of the state's actions. Although the plaintiff asserted this conclusion in his complaint, this is not necessarily sufficient to overcome defendants motion to dismiss. As we have noted, we need not accept "bald assertions" or "legal conclusions" contained in the complaint. In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-30 (3d Cir. 1997)(quoting Glassman v. Computervision Corp., 90 F.3d 617, 628 (1st Cir. 1996)). We hold that defendants, as a matter of law, could not have foreseen that allowing construction workers to use an unlocked back entrance for access to the school building would result in the murderous act of a mentally unstable third party, and that the tragic harm which ultimately befell Diane Morse was too attenuated from defendants' actions to support liability.

First, the complaint did not allege that defendants were aware of Stovall's violent propensities. There are no

11

allegations that Stovall had made threats against Diane Morse or any other persons at the Lower Merion High School, or even that she had a history of violent behavior. The only allegation in the complaint that addresses whether defendants should have foreseen the danger posed by Stovall that day was that, during the week preceding the murder, she had been seen "loitering in the school and the school area." (Complaint P 31). Assuming that defendants were aware of this fact, as we must when reviewing the grant of a motion to dismiss, this is insufficient as a matter of law to put defendants on notice that Stovall would return in a few days with a .38 revolver and a homicidal intent.

Second, there is no allegation that defendants were aware of anyone posing a credible threat of violence to persons inside the school building. Although the complaint alleges that defendants were aware of previous "security breaches" by unnamed persons, it does not allege that Stovall, or any other mentally deranged person, had entered the school building previously. In addition, the complaint contains no allegation, and plaintiff cannot prove any set of facts, that would demonstrate that defendants were aware of the likelihood that a mentally deranged person would enter the school in search of a victim.

Third, Stovall's attack was not a "fairly direct" result of defendants' actions. We recognize that plaintiff has alleged that the harm which befell Ms. Morse was "a direct result of defendants' acts." But we are not bound to accept a conclusory statement, and as a matter of law this cannot be true. Plaintiff's allegation that, as a result of defendants' decision to allow construction workers to have access to the school through an unlocked rear entrance, Stovall was able to enter the building and murder Diane Morse is insufficient to support liability. While we must accept the allegation that Stovall gained access to the building through the unlocked rear entrance, this does not mean the attack on Diane Morse occurred as a direct result of defendants allowing the construction crews to prop open the door. The causation, if any, is too attenuated. Plaintiff can prove no set of facts which will provide the direct causal connection between Stovall's deadly attack and any of defendants' allegedly improper acts.

The cases which have found liability under the state-created danger theory do not stretch the concepts of foreseeability and causation this far. Kneipp itself involved a visibly inebriated and incapacitated woman who was left alone on the road by police. Consequently we concluded that "a reasonable jury could find that the harm likely to befall Samantha if separated from [her husband] while in a highly intoxicated state in cold weather was indeed foreseeable" and could have led directly to her injuries. 95 F.3d at 1208.

Similarly, the decisions to hold the state actors liable under the state-created danger theory in Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989), and Cornelius v. Town of Highland Lake, 880 F.2d 348 (11th Cir. 1989), were premised on facts in which the harm visited on the plaintiffs was more foreseeable than the random attack perpetrated by Stovall here. The plaintiff in Wood was the female passenger of a drunk driver who was pulled over late one evening by police. The driver was arrested and the car impounded, leaving Ms. Wood stranded on the road in a notoriously high crime area. After beginning the five mile walk to her home, Ms. Wood accepted a ride from an unknown man who subsequently took her to a secluded area and raped her. Addressing the issue of foreseeable harm, the court noted that the "inherent danger facing a woman left alone at night in an unsafe area is a matter of common sense." 879 F.2d at 590 (citations omitted).

In Cornelius, the United States Court of Appeals for the Eleventh Circuit found that prison and town officials could be liable to the plaintiff, who was abducted and held hostage for several days by prison inmates assigned to a community work program in the town hall where she was employed. Reversing the lower court's grant of summary judgment, the court of appeals found that genuine issues of fact existed which related to the "special danger" created by the work squad's presence in the town hall. The court noted that the defendants in Cornelius knew of the dangerous propensities of the prison inmates assigned to the work program, as well as the lack of supervision over those inmates, and thus "were aware of the danger present from the community work squad inmates." 880 F.2d at

13

358. The ultimate manifestation of that danger was therefore foreseeable. By contrast, there is no allegation in the complaint here that defendants knew that Stovall posed a threat to anyone at Lower Merion High School, let alone Diane Morse.

In this respect the case before us is more analogous to the facts in Gregory v. City of Rogers, 974 F.2d 1006 (8th Cir. 1992), cert. denied, 507 U.S. 913 (1993). In Gregory, three friends were returning home from an evening of drinking, with one of them, Stanley Turner, serving as designated driver. The police stopped their vehicle for running a red light, and in the process of making a routine warrant check, discovered an outstanding warrant for Turner's arrest. At his request, the police allowed Turner to drive to the station in order to clear up the matter. After arriving at the station, Turner parked and went inside, leaving behind his two intoxicated passengers, and leaving the keys in the ignition. After waiting for thirty minutes, the passengers drove off, and were involved in a single car accident which killed the driver and injured the other passenger. Plaintiffs – the surviving passenger and the wife, son and estate of the decedent – brought a claim against the police under the state–created danger theory. The district court granted the defendants' motion for summary judgment, and the United States Court of Appeals for the Eighth Circuit, sitting en banc, affirmed. The court concluded that even if the police were aware that both passengers were intoxicated, a reasonable trier of fact could not find that the police placed them in a dangerous situation by merely leaving them alone in the car. Id. at 1011 (contrasting the facts there with the facts in Wood). "Simply put, it was not unsafe for the intoxicated [passengers] to wait for Turner inside the car where it was parked until Turner inexplicably left the keys with them." Id. at 1012. The court ruled that because Turner's unforeseeable act was the catalyst for the injury which plaintiffs suffered, the police could not be held liable. Id.

The same can be said in the case before us. Here, it was not defendants' decision to allow the rear entrance to the school to remain open that precipitated or was the catalyst for the attack on Ms. Morse. Furthermore, we believe that

14

the harm allegedly created by the defendants in Gregory was more foreseeable than the harm allegedly created here. Unlike the situation in Gregory, where the defendants were aware that intoxicated passengers were left behind in the car, the defendants here were unaware that any mentally deranged person, let alone Stovall, was waiting outside the building for an opportunity to cause harm. Based on a review of the complaint, we find that plaintiff can prove no set of facts which will entitle him to relief. Defendants could not have foreseen the danger to Diane Morse, nor, as a matter of law, can their actions be said to have directly caused the attack. Consequently, plaintiff has failed to plead adequately the foreseeable injury element of the Kneipp test.

## B. Willful Disregard for Plaintiff's Safety

The second prong of the Kneipp test asks whether the state actor acted with willful disregard for or deliberate indifference to plaintiff's safety. Kneipp , 95 F.3d at 1208 & n.21. "[T]he environment created by the state actors must be dangerous; they must know it to be dangerous; and . . . [they] must have been at least deliberately indifferent." Johnson v. Dallas Indep. Sch. Dist., 38 F.3d 198, 201 (5th Cir. 1994), cert. denied, 514 U.S. 1017 (1995). See also Leffal v. Dallas Indep. Sch. Dist., 28 F.3d 521, 531 (5th Cir. 1994) ("[I]t is not enough to show that the state increased the danger of harm from third persons; the [S] 1983 plaintiff must also show that the state acted with the requisite degree of culpability in failing to protect the plaintiff."). In other words, the state's actions must evince a willingness to ignore a foreseeable danger or risk. Of course, the notion of deliberate indifference contemplates a danger that must at least be foreseeable. In Kneipp, we focused on the police officers' decision to send Samantha Kneipp home alone, despite their awareness of her intoxicated and incapacitated state, as evidence of their deliberate indifference. In Cornelius, the court held the defendants could be liable based on their knowledge of the risk created by the presence of the community work squad inmates. 880 F.2d at 358. These factors are not present here. Defendants could not have been aware of the danger posed by Stovall, nor could they have foreseen it. As a

15

matter of law they cannot have acted with willful disregard
for Diane Morse's safety.[10]

Our decision in Mark v. Borough of Hatboro is instructive.
The plaintiff owned an auto repair business that was
destroyed in a fire set by a volunteer firefighter. The
plaintiff filed a S 1983 action against the borough and the

_____

10. The Kneipp court noted that "we have declined to distinguish such
terms as "deliberate indifference," "reckless indifference," "gross
negligence," or "reckless disregard" in the context of a violation of
substantive due process under the Fourteenth Amendment." 95 F.3d at
1208 n.21 (citing Williams v. Borough of West Chester, 891 F.2d 458,
464 n. 10 (3d Cir. 1989)). The concept of "willful disregard" fits within
this same ill-defined category of mens rea. "Willful disregard" and
"reckless indifference" appear to fall somewhere between intent, which
"includes proceeding with knowledge that the harm is substantially
certain to occur" and negligence, which involves"the mere unreasonable
risk of harm to another." W. Page Keeton et al, Prosser & Keeton on
Torts S 34 at 212 (5th ed. 1984). Thus the term "willful" indifference is
somewhat misleading, requiring not an intent to harm, but a failure to
act appropriately in light of a known or obvious risk. Id. at 213-14 ("The
`willful' requirement, therefore, breaks down and receives at best lip
service, where it is clear from the facts that the defendant, whatever his
state of mind, has proceeded in disregard of a high and excessive degree
of danger, either known to him or apparent to a reasonable person in his
position.").

The Restatement (Second) on Torts S 500 reiterates this standard:

        The actor's conduct is in reckless disregard of the safety of
another
        if he does an act or intentionally fails to do an act which it is
his
        duty to the other to do, knowing or having reason to know of facts
        which would lead a reasonable man to realize, not only that his
        conduct creates an unreasonable risk of physical harm to another,
        but also that such risk is substantially greater than that which is
        necessary to make his conduct negligent.

The Restatement underscores that the test of willful indifference does not
require that the state actor "recognize [his conduct] as being extremely
dangerous . . . [but that] he knows or has reason to know of
circumstances which would bring home to the realization of the
ordinary, reasonable man the highly dangerous character of his
conduct." Id., comment c. The element of willfulness, however, is not
entirely disregarded, and thus "[c]onduct cannot be in reckless disregard
of the safety of others unless the act or omission is itself intended."
Id.,
comment b.

fire company, claiming their failure to properly screen volunteer firefighters resulted in the damage to his property. Affirming the district court's grant of summary judgment, we rejected plaintiff's claim that "the danger of volunteer firefighters committing arson is so grave and so obvious that the defendants failure [to screen volunteers] evinced willful disregard for the rights of individuals with whom the firefighters came in contact." Mark, 51 F.3d at 1140. A similar analysis can be applied to the allegations here. As contrasted with the risk that an intoxicated woman left alone on the road during inclement weather might be injured, the risk that unlocking a school entrance would invite the actions of a deranged third person is no more a foreseeable risk than the risk that a firefighter will have a proclivity for arson. Consequently, defendants here cannot have acted with the requisite culpability to be liable under the state-created danger theory.

Also instructive is the decision of the United States Court of Appeals for the Fifth Circuit in Johnson v. Dallas Indep. Sch. Dist., 38 F.3d 198 (5th Cir. 1994), cert. denied, 514 U.S. 1017 (1995). In that case, a student at a Dallas high school was killed by a stray bullet fired by a non-student during an argument in a school hallway. The ruckus was instigated by the non-student, who was able to enter the school carrying a concealed weapon because the school's metal detectors were not in use. The decedent's father filed suit under S 1983, claiming, inter alia, that the school district was responsible for his son's death under the state-created danger theory. The district court granted defendants' motion to dismiss, and the court of appeals affirmed. According to the court,

> [a]ctual knowledge of a serious risk of physical danger to the plaintiff has been a common feature of the state-created danger cases. From the pleadings in this case, no legitimate inference can be drawn that the school officials might have been actually aware of a high risk that an armed non student invader would enter the campus and fire a pistol randomly during school hours.

38 F.3d at 201-202. The court of appeals found that "the most that may be said of defendants' ultimately ineffective

17

attempts to secure the environment is that they were negligent, but not that they were deliberately indifferent." Id. at 202.

The same is true in the case before us. Stovall's attack on Diane Morse was not a foreseeable risk, and there is no allegation in the complaint that defendants knew of the threat she posed. Defendants, by allowing construction workers to keep the rear entrance to the school unlocked, did not willfully or deliberately disregard a foreseeable danger. Assuming their actions rose to the level of negligence, merely negligent acts cannot support a claim under the state-created danger theory of S 1983. Kneipp, 95 F.3d at 1208; Johnson, 38 F.3d at 202. Much like the decedent in Johnson, Morse was "the tragic victim of random criminal conduct rather than of school officials' deliberate, callous decisions," and plaintiff's complaint cannot be read to allege otherwise. Consequently, plaintiff has not met his pleading burden under the second prong of the Kneipp test.

C. Relationship Between State and Plaintiff – Foreseeable
       Plaintiff.

The third element of the Kneipp test asks whether "there existed some relationship between the state and the plaintiff." In Mark, when we initially identified this as an element of the state-created danger theory, we explained that the cases which had found liability were based on facts where the state acted in such a way as to leave "a discrete plaintiff vulnerable to a foreseeable injury." 51 F.3d at 1153. In Kneipp we found there was "a relationship between the state and [Ms. Kneipp] . . . during which the state place[d] the victim in danger of a foreseeable injury." We then distinguished this "relationship" element of the state-created danger theory from that required under the "special relationship" theory of DeShaney, noting that "the relationship requirement under the state-created danger theory contemplates some contact such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense." 95 F.3d at 1209 n.22.

The district court here interpreted the "foreseeable plaintiff" element11 ofKneipp and Mark to require that "a plaintiff must allege facts indicating that there was a

_____

11. Although the district court referred to this element as the "discrete plaintiff " requirement, we use the term "foreseeable plaintiff" to describe
this element of the Mark test.

particular danger to the victim of the resulting harm."
Morse, 1996 WL 677514, at *2. The district court traced the
progression of the "foreseeable plaintiff" requirement from
its origins in Martinez v. California, 444 U.S. 277 (1980).
Martinez involved a S 1983 action brought by the parents of
a young girl who was murdered by a parolee five months
after his release from prison. Plaintiffs alleged that the
officials responsible for granting parole were liable for their
daughter's death. In rejecting plaintiffs' claims, the
Supreme Court stated that "the parole board was not aware
that appellant's decedent, as distinguished from the public
at large, faced any special danger." 444 U.S. at 285. The
district court read this language to require that the state
actor be aware that it is creating a risk of harm to a
particular plaintiff.

Our decision in Commonwealth Bank & Trust Co. v.
Russell, 825 F.2d 12 (3d Cir. 1987) also addressed the
issue of who qualifies as a "foreseeable plaintiff." In that
instance a suit was filed on behalf of a couple murdered by
an escaped inmate, alleging that breaches in the prison's
security resulted in the prisoner's escape and, ultimately,
the couple's death. We held that prison officials were not
liable on the grounds that, inter alia, they could not have
known that decedents faced any particular threat greater
than that faced by the "public at large." Id. at 16. Once
again, the district court here read this case as requiring
plaintiffs employing the state-created danger theory to
allege they faced a particular threat of harm which set them
apart from the general public.

The district court next examined our decision in Mark v.
Borough of Hatboro. As we have noted, the actor in that
case was a volunteer firefighter who set fire to and
destroyed the plaintiff's auto repair business. The plaintiff
contended the municipality was liable to him for arson
damage under the state-created danger theory. We declined
to address the viability of the theory at that time, ruling
that in any event a constitutional violation could not be
made out under the facts of the case. As we stated:

> When the alleged unlawful act is a policy directed at
> the public at large – namely a failure to protect the
> public by failing adequately to screen applicants for

19

> membership in a volunteer fire company, the rationale
> behind the rule disappears – there can be no specific
> knowledge of the particular plaintiff's condition, and
> there is no relationship between the defendant and the
> plaintiff.

51 F.3d at 1153. Focusing on this language, the district
court interpreted the third prong of the Kneipp test to
require an allegation that the state actor was aware of a
danger to a specific individual. Because the complaint did
not allege this, the district court held that plaintiff failed to
state a claim under the state-created danger theory.12

We analyze the foreseeable plaintiff prong somewhat
differently than the district court. It seems evident that the
Supreme Court's "public at large" language in Martinez, as
well as our statements in Commonwealth and Marks,
exclude from the reach of the state-created danger theory
those instances where the state actor creates only a threat

_____

12. There appears to be some question whether Mark and Kneipp require
the state actor have "specific knowledge" of the plaintiff, or merely that
the plaintiff was a "foreseeable" victim. But any tension, we believe, can
be explained by a review of the facts of each case. Discussing whether
the creation of a danger to the "public at large" could lead to liability
under the state-created danger theory, the Mark court noted that "when
the alleged unlawful act is a policy directed at the public at large . . .
there can be no specific knowledge of the particular plaintiff's
condition"
and thus the third element of the Mark test is not met. 51 F.3d at 1153.
The Kneipp court, on the other hand, stated that the relationship
element of the state-created danger theory "contemplates some contact
such that the plaintiff was a foreseeable victim of a defendant's acts in
a tort sense." 95 F.3d at 1209 n.22. The distinguishing characteristic
here is the allegedly unlawful act. Mark involved a claim in which the
alleged "act" was a policy directed at the public at large, whereas the
acts of the police officer in Kneipp were directed at a particular
individual. Where the state actor has allegedly created a danger towards
the public generally, rather than an individual or group of individuals,
holding a state actor liable for the injuries of foreseeable plaintiffs
would
expand the scope of the state-created danger theory beyond its useful
and intended limits. Where, as here, the allegedly unlawful acts of the
state actor affect only a limited group of potential plaintiffs, the
potentially broad reach of the state-created danger theory is constrained
by examining whether the plaintiff or plaintiffs were "foreseeable"
victims.

to the general population. This is in keeping with the Court's decision in DeShaney, and the general rule that the state is not obligated to protect its citizens from the random, violent acts of private persons. But it does not appear this limitation necessarily restricts the scope of S 1983 to those instances where a specific individual is placed in danger. Another view of these cases would allow a plaintiff, in certain situations, to bring a state-created danger claim if the plaintiff was a member of a discrete class of persons subjected to the potential harm brought about by the state's actions. Stated differently, depending on the facts of a particular case, a "discrete plaintiff" may mean a specific person or a specific class of persons. The primary focus when making this determination is foreseeability.

Some of the cases that have applied the state-created danger theory have held state actors liable for creating a risk to a definable class of persons. The decision of the United States Court of Appeals for the Seventh Circuit in Reed v. Gardner, 986 F.2d 1122 (7th Cir. 1993), is illustrative. In that case, police officers arrested the driver of a vehicle, Cathy Irby, and left behind her intoxicated passenger, Larry Rice, with the keys to the car. A few hours later Rice, while driving Irby's car, collided head on with plaintiff 's vehicle, killing plaintiff 's wife and pre-natal son, and injuring the plaintiff, his two daughters and his in-laws. The court of appeals reversed the lower court's dismissal of plaintiff 's state-created danger claim, noting that "it was the police action in removing Irby, combined with their knowledge of Rice's intoxication, which creates their liability for the subsequent accident."13 Clearly the act of placing a drunk driver at the wheel of the car did not create a danger to the Reed family specifically. The court of appeals found that the act "rendered the Reeds and the other motorists on Route 130 vulnerable to a dangerous driver." Id. at 1127 ("When the police create a specific

_____

13. The Reed court assumed, based on its reading of the complaint, that Irby was sober at the time of the arrest. It noted, however, that if she had in fact been intoxicated, the state could not be liable "for exchanging
one drunk driver for another" because even "without state intervention, the same danger would exist." 986 F.2d at 1125.

danger, they need not know who in particular will be hurt. Some dangers are so evident, while their victims are so random, that state actors can be held accountable by any injured party.").

It is evident that the case law in this area is not uniform on the necessity to allege a specific plaintiff as opposed to a specific class of plaintiffs. What is clear is that a member of the general public may not qualify. Of course, DeShaney involved a discrete, individual plaintiff, and as the source of the state-created danger theory, can be read to restrict who may sue under this theory. But in other situations, requiring the plaintiff to be part of an identifiable and discrete class of persons subject to the harm the state allegedly has created also fits within the purposes of the state-created danger theory.

For this reason, it would not appear that the state-created danger theory of liability under S 1983 always requires knowledge that a specific individual has been placed in harm's way. Although it is appropriate to draw lines here, there would appear to be no principled distinction between a discrete plaintiff and a discrete class of plaintiffs. The ultimate test is one of foreseeability.

The issue here is whether Diane Morse, and all those present in Lower Merion High School, were a sufficiently discrete group of persons who could have been foreseeable victims of an armed and dangerous intruder. This is by no means an easy question, for the reasons we have expressed. But we need not decide this issue here because we hold that plaintiff cannot satisfy the other three prongs of the Kniepp test.

D. Creating the Opportunity for Harm

The final element of the Kneipp test is whether the state actor used its authority to create an opportunity which otherwise would not have existed for the specific harm to occur. The district court read this requirement to contemplate that a state actor must affirmatively act to create the risk which results in harm to the plaintiff. Under the allegations presented here, the district court concluded that the only affirmative act attributable to the defendants was the assertion they unlocked the door to facilitate the

22

work of the various contractors at the high school. The district court declined to address whether the act of unlocking the door rose "to the level required to impose liability under the state-created danger theory," Morse, 1996 WL 677514, at *6 (quoting Kneipp, 95 F.3d at 1207), relying instead on plaintiff's failure to satisfy the "foreseeable plaintiff " requirement under Kneipp.

The case law addressing the question whether an affirmative act is required under the state-created danger theory, and if so what constitutes an affirmative act for purposes of liability, is less than clear. Conduct that has been held to be an affirmative act under one set of facts has not met that standard in a similar setting. For example, we held in Kneipp that the police officer's act of "interven[ing] to cut off Samantha's private source of protection by giving Joseph permission to go home alone" constituted an affirmative act for purposes of S 1983 liability.14 95 F.3d at 1210; see also Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989), cert. denied, 498 U.S. 938 (1990) (trooper liable for arresting driver of vehicle and leaving female passenger alone in a high crime area); White v. Rochford, 592 F.2d 381 (7th Cir. 1979) (arresting driver and leaving minor passengers behind in vehicle on side of highway gave rise to constitutional claim).

By comparison, the opinion in Gregory v. City of Rogers, 974 F.2d 1006 (8th Cir. 1992), draws a different conclusion from a similar act. In that instance, the police removed the designated driver of a vehicle because of an outstanding arrest warrant, and left behind two intoxicated persons who subsequently drove off and were involved in an accident. The United States Court of Appeals for the Eighth Circuit held the police officer could not be held to have affirmatively placed the intoxicated passengers in danger.

Courts that have addressed this issue have pointed out that the line between an affirmative act and an omission is difficult to draw. As the United States Court of Appeals for the Seventh Circuit said:
_____

14. Whether the officers's actions in Kneipp constituted an affirmative act
or an act of omission is a close question.

23

> We do not want to pretend that the line between action
> and inaction, between inflicting and failing to prevent
> the infliction of harm, is clearer than it is. If the state
> puts a man in a position of danger from private
> persons and then fails to protect him, it will not be
> heard to say that its role was merely passive; it is as
> much an active tortfeasor as if it had thrown him into
> a snake pit.

Bowers v. DeVito, 686 F.2d 616, 618 (7th Cir. 1982) The district court here noted this difficulty when it said that "[s]tate-created danger law does not address the question of when an act crosses the line and becomes an affirmative act warranting Section 1983 liability." Morse at *6 n.11.

Whether an affirmative act rather than an act of omission is required under the state-created danger theory appears to have been answered by Mark. As the Mark court noted, one of the common factors in cases addressing the state-created danger is that the state actors "used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur." Mark, 51 F.3d at 1152. Thus, the dispositive factor appears to be whether the state has in some way placed the plaintiff in a dangerous position that was foreseeable, and not whether the act was more appropriately characterized as an affirmative act or an omission.

The following cases are illustrative of this principle. In Mitchell v. Duval County Sch. Bd., 107 F.3d 837 (11th Cir. 1997), the court of appeals rejected a state-created danger claim under facts analogous to the case before us. The decedent, Richard Mitchell, was a fourteen year-old student who was shot and killed one evening while waiting for a ride home from a school function. Mitchell had attempted to telephone his father from inside the school administration office, but was denied entry. Instead he used an outside pay phone, and, while waiting for his father on a driveway adjacent to the school, was shot and killed during a robbery attempt. The court of appeals rejected plaintiff's state-created danger theory on the grounds that he failed to "show that the state affirmatively placed decedent in a position of danger." Id. at 839. According to the court, nothing the school did "required

24

[decedent] to wait where he did." Indeed, the boy could have waited inside the administration building or immediately outside, rather than waiting "a considerable distance away on the edge of the school's parking lot." Because the plaintiffs could prove no set of facts which would demonstrate that either an act or omission on the part of the state actors placed the decedent closer to the ultimate harm, the court of appeals affirmed the dismissal of the complaint.

In a case before this Court, two high school students filed a S 1983 claim alleging they were sexually molested by fellow students in the bathroom and darkroom of their graphic arts class room. D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364 (3d Cir. 1992) (en banc), cert. denied, 506 U.S. 1079 (1993). According to their complaint, the high school's failure to adequately supervise the class or investigate the misconduct created the dangerous situation that resulted in their injuries. We affirmed the dismissal of the complaint, holding that the school was not liable because the plaintiffs did not demonstrate that the state placed the plaintiffs in danger, increased their risk of harm, or made them more vulnerable to danger. "Plaintiffs did not suffer harm, however, from that kind of foreseeable risk. . . . Plaintiff's harm came about solely through the acts of private persons without the level of intermingling of state conduct with private violence that supported liability in Wood, Swader, and Cornelius." 972 F.2d at 1375.

In both cases, there was no direct causal connection between the acts or omissions of the state and the harm which befell the victim. In neither case was it the act or omission of the state actor that directly placed the victim in harm's way. The same can be said of the case before us. Plaintiff does not allege, nor can he prove, that defendants placed Diane Morse in "a dangerous environment stripped of means to defend [herself] and cut off from sources of aid." Johnson, 38 F.3d at 202. Nor does plaintiff allege that defendants placed her in a "unique confrontational encounter" with Stovall. Cornelius, 880 F.2d at 359. What plaintiff does allege is that defendants, by unlocking the rear entrance of the school building, "increased the risk to

25

Diane Morse . . . and left Diane Morse vulnerable to the actions of her attacker." Complaint P 44. As we have already noted, however, Stovall's deadly attack was not a foreseeable and fairly direct result of defendants' behavior. Plaintiff, therefore, can prove no set of facts that will demonstrate that defendants placed Diane Morse in harm's way, and consequently has not satisfied the fourth prong of the Kneipp test.

Conclusion

Based on the foregoing, we hold that plaintiff has not met the test set forth in Kneipp v. Tedder and has failed to state a claim under the state-created danger theory of 42 U.S.C. S 1983.

We will affirm the judgment of the district court.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit